<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

DONALD HIGGS,                    :
                                 :    Civil Action No. 06-5815 (RMB)
          Plaintiff,             :
                                 :
          v.                     :    **OPINION**
                                 :
PATRICIA PREZIOSO, et al.,       :
                                 :
          Defendants.            :


**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Donald Higgs
Mid-State Correctional Facility
Wrightstown, NJ 08562


**BUMB**, District Judge

    Plaintiff Donald Higgs, a prisoner confined at Mid-State
Correctional Facility in Wrightstown, New Jersey, seeks to bring
this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983,
alleging violations of his constitutional rights.  Based on his
affidavit of indigence and the absence of three qualifying
dismissals within 28 U.S.C. §1915(g), the Court will grant
Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to
28 U.S.C. § 1915(a) and order the Clerk of the Court to file the
Complaint and Amended Complaint.

    At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.

Plaintiff contends that on July 20, 1995, the South Orange police assisted the Orange police in an investigation of an incident that occurred in Orange, New Jersey.  During this investigation, an officer of the South Orange Police Department provided Orange police officer Det. Sgt. Brian David information about an arrest warrant out in South Orange for Plaintiff for a burglary.  On July 25, 1995, officers of both police departments entered the home of Plaintiff's mother-in-law, allegedly unlawfully, and arrested Plaintiff.  Plaintiff contends that he was arrested unlawfully and charged with the following offenses: first-degree attempted carjacking, first-degree kidnapping, second-degree robbery, and second-degree aggravated assault, before being taken to the Essex County jail.  Later, Plaintiff was indicted for these crimes as well as three lesser-included offenses of attempted theft of a motor vehicle, simple assault, and criminal restraint.

Plaintiff alleges further that the Essex County prosecutor misled the grand jury regarding the attempted carjacking offense, for which Petitioner was indicted.  Plaintiff alleges that the prosecutor's office was engaged in a conspiracy in connection with this grand jury procedure, but does not otherwise provide any facts describing the alleged conspiracy or its participants.

Plaintiff's first trial ended in a mistrial.  Plaintiff was re-tried.  Plaintiff contends that the judge Terrence P. Flynn, prosecutor Thomas D. Carver, Jr., and defense attorney Robert S. Miseo deliberately conspired to deprive Plaintiff of his constitutional right not to be deprived of liberty without due process, apparently by participating in a trial for attempted carjacking, a crime which Plaintiff alleges does not exist under New Jersey law, by introducing evidence of the Orange County arrest warrant, and by giving misleading jury instructions. Plaintiff was then convicted of attempted carjacking, robbery, simple assault, and criminal restraint.  Plaintiff was sentenced to an aggregate term of twenty years with a five-year parole disqualifier.  Plaintiff's appeals and motion for post-conviction relief were unsuccessful and he remains confined pursuant to these convictions.

Plaintiff names as defendants: (1) Det. Sgt. Brian David, who is alleged to have unlawfully arrested Plaintiff, (2) John Doe Police Officer of the South Orange Police Department, who is

alleged to have unlawfully arrested Plaintiff; (3) John Doe Assistant Prosecutor, Essex County Prosecutor's Office, who is alleged to have perjuriously misled the grand jury regarding the attempted carjacking charge; (4) Essex County Assistant Prosecutor Thomas D. Carver, Jr., who is alleged to have wrongfully prosecuted Plaintiff for the allegedly non-existent crime of attempted carjacking and to have wrongfully obtained the dismissal of the lesser included offense of attempted theft of a motor vehicle, in order to secure a conviction for the attempted carjacking charge; (5) pool defense attorney Robert S. Miseo, who is alleged to have conspired to deprive Plaintiff of his liberty without due process by failing to obtain dismissal of the attempted carjacking charge and by bringing up evidence of the South Orange arrest warrant; (6) Judge Terrence P. Flynn, who is alleged to have conspired to procure the conviction of Plaintiff on the attempted carjacking charge by admitting evidence of the South Orange arrest warrant and by giving misleading instructions to the jury; (7) appellate attorney Jane Haburay, who is alleged to have conspired to deprive Plaintiff of his liberty without due process by failing to include various arguments in the brief she filed on Plaintiff's behalf; (8) Prosecutor Judy M. Gagliano, who is alleged to have conspired to deprive Plaintiff of his liberty without due process by making misleading statements to the Parole Board.  In the caption of the Amended Complaint, Petitioner also

names as defendants Assistant Attorney General Patricia Prezioso,

Governor Jon Corzine, and Mid-State Correctional Facility

Administrator John Robertshaw.

Plaintiff seeks declaratory relief, compensatory damages,

punitive damages, and injunctive relief in the form of an order

for his immediate release.[1]

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time,

certain in forma pauperis and prisoner actions that are

frivolous, malicious, fail to state a claim, or seek monetary

relief from a defendant who is immune from such relief.  See 28

U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C.

§ 1915A (actions in which prisoner seeks redress from a

governmental defendant); 42 U.S.C. § 1997e (prisoner actions

brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the

Court must be mindful to construe it liberally in favor of the

plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United

States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

---

[1] A claim challenging the legality of confinement pursuant
to the judgment of a state court and seeking immediate release
must be brought as a petition for writ of habeas corpus pursuant
to 28 U.S.C. § 2254.  See Preiser v. Rodriquez, 411 U.S. 475, 500
(1973).  Petitioner has previously filed a petition for writ of
habeas corpus that was dismissed as untimely.  See Higgs v. Shaw,
Civil Action No. 06-2206 (WJM).  Accordingly, there is no reason
to construe the claim for release as a petition for writ of
habeas corpus and to sever that claim.

"accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat superior</u>.  <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers

or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).[2]

IV.   ANALYSIS

A.   False Arrest Claim

Plaintiff claims that Det. Sgt. Brian David and a John Doe police officer arrested him without sufficient probable cause. This claim must be dismissed as untimely. See Nicholas v. Heffner, 2007 WL 933298, *2 (3d Cir. 2007) (unpubl.) ("Where the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to

---

[2] No allegations of personal involvement are made against Assistant Attorney General Patricia Prezioso, Governor Jon Corzine, or Administrator John Robertshaw. Accordingly, all claims against these defendants will be dismissed.

determine whether dismissal is appropriate, <u>sua</u> <u>sponte</u> dismissal under 28 U.S.C. § 1915 is permissible.").

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. <u>See</u> <u>Walmsley v. Philadelphia</u>, 872 F.2d 546 (3d Cir. 1989)(citing cases); <u>see</u> <u>also</u>, <u>Albright v. Oliver</u>, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." <u>Groman v. Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995); <u>Palma v. Atlantic County</u>, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing <u>Groman</u>). Indeed, the U.S. Supreme Court recently noted that, "False arrest and false imprisonment overlap; the former is a species of the latter." <u>Wallace v. Kato</u>, 127 S.Ct. 1091, 1095 (2007).

An arrestee could file suit as soon as the allegedly wrongful arrest occurs; the limitations period begins to run, however, only when the allegedly false imprisonment ends. <u>Wallace</u>, 127 S.Ct. at 1095-96.

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held <u>pursuant to such process</u> - when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the

"entirely distinct" tort of malicious prosecution,
which remedies detention accompanied, not by absence of
legal process, but by <u>wrongful institution</u> of legal
process.  "If there is a false arrest claim, damages
for that claim cover the time of detention up until
issuance of process or arraignment, but not more.  From
that point on, any damages recoverable must be based on
a malicious prosecution claim and on the wrongful use
of judicial process rather than detention itself."

<u>Wallace</u> 127 S.Ct. 1096 (emphasis in original) (citations and
footnote omitted).

Civil rights claims are best characterized as personal
injury actions and are governed by the applicable state's statute
of limitations for personal injury actions.[3]  <u>See</u> <u>Wilson v.</u>
<u>Garcia</u>, 471 U.S. 261, 280 (1985).  Accordingly, New Jersey's two-
year limitations period on personal injury actions, N.J. Stat.
Ann. § 2A:14-2, governs Plaintiff's claims.  <u>See</u> <u>Montgomery v.</u>
<u>DeSimone</u>, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); <u>Cito v.</u>
<u>Bridgewater Township Police Dept.</u>, 892 F.2d 23, 25 (3d Cir.
1989).  Under N.J. Stat. Ann. § 2A:14-2, an action for an injury
to the person caused by a wrongful act, neglect, or default must
be commenced within two years of accrual of the cause of action.
<u>Cito</u>, 892 F.2d at 25; <u>accord</u> <u>Brown v. Foley</u>, 810 F.2d 55, 56 (3d
Cir. 1987).  Unless their full application would defeat the goals
of the federal statute at issue, courts should not unravel

---

[3] However, "the accrual date of a § 1983 cause of action is
a question of federal law that is <u>not</u> resolved by reference to
state law."  <u>Wallace v. Kato</u>, 127 S.Ct. at 1095 (emphasis in
original).

states' interrelated limitations provisions regarding tolling, revival, and questions of application.  Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable).  New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.  See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff
> with respect to her cause of action; (2) where the
> plaintiff has been prevented from asserting her claim
> as a result of other extraordinary circumstances; or
> (3) where the plaintiff asserts her claims in a timely
> manner but has done so in the wrong forum.

Id. n.9.

Here, according to the allegations of his Complaint, Plaintiff's claims against all defendants accrued no later than the date of his first trial. Although Plaintiff does not state in the Complaint or Amended Complaint the date on which he was arraigned, he does state that he had completed two trials and his direct appeals by the time he filed his state petition for post-conviction relief on December 26, 2000. Plaintiff alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law. Thus, Plaintiff's false arrest/false imprisonment claims asserted in his Complaint mailed on December 1, 2006, are untimely and must be dismissed with prejudice.

B.   Claims against Judge Terrence P. Flynn

Plaintiff claims that Judge Terrence P. Flynn conspired with counsel to procure Plaintiff's conviction by improperly granting a motion to dismiss a lesser-included offense, allowing the introduction of certain testimony, and giving incorrect jury instructions.

"On its face § 1983 admits no immunities." <u>Tower v. Glover</u>, 467 U.S. 914, 920 (1984).  Courts have recognized, however, a number of absolute and qualified immunities.

As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity.  <u>See</u> <u>Mireles v. Waco</u>, 502 U.S. 9, 9 (1991). Judicial immunity can be overcome only for actions not taken in a judicial capacity, <u>id</u>., or for actions taken in a complete absence of all jurisdiction, 502 U.S. at 11-12.  Allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity.  <u>See</u> <u>Forrester v. White</u>, 484 U.S. 219, 227 (1988).

Judicial immunity also shields judges from suit for injunctive relief.  <u>See</u> 42 U.S.C. § 1983 (state judges) (abrogating in part <u>Pulliam v. Allen</u>, 466 U.S. 522, 541-42 (1984)).  Thus, all claims against Judge Flynn must be dismissed with prejudice.

C.   <u>Alleged Trial Errors</u>

Plaintiff claims that the prosecutors and defense attorneys conspired to procure Plaintiff's conviction for an offense he alleges does not exist under New Jersey law, to wit, attempted carjacking, by obtaining the dismissal of lesser-included charges, and committing various other trial errors, including

13

injection of inadmissible evidence of another arrest warrant and by failing to object to the indictment.

In a series of cases beginning with Preiser v. Rodriquez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C.§ 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476.  The prisoners did not seek compensatory damages for the loss of their credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in Preiser, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding.  Again,

14

the Court rejected § 1983 as a vehicle to challenge the
lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has not been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further
instructed district courts, in determining whether a complaint
states a claim under § 1983, to evaluate whether a favorable
outcome would necessarily imply the invalidity of a criminal
judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will not demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that
"a § 1983 cause of action for damages attributable to an
unconstitutional conviction or sentence does not accrue until the
conviction or sentence has been invalidated."  Id. at 489-90.

15

Plaintiff's claims against the prosecutors and defense counsel present the types of claims addressed in Heck; that is, a finding that Plaintiff's conviction was procured by unconstitutional means would necessarily imply the invalidity of his conviction.  In essence, Plaintiff asserts that he was prosecuted for a non-existent crime and that his defense counsel were ineffective in failing to challenge that wrongful charge. See Strickland v. Washington, 466 U.S. 668 (1984) (describing "the standards by which to judge a contention that the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel").  As Plaintiff does not contend that his conviction has been invalidated, these claims have not yet accrued.[4]  Accordingly, these claims must be dismissed for failure to state a claim.

D.   Claims against Defense Attorneys

Plaintiff contends that both his trial and appellate counsel provided ineffective assistance.  As noted above, these claims are premature until such time as Plaintiff's criminal conviction is invalidated.  See Heck v. Humphrey, 512 U.S. 477 (1994).  See also Lyle v. Jackson, 49 Fed.Appx. 492, 494 (6th Cir. 2002); Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995); Boyd v. Biggers, 31 F.3d 279, 283 (5th Cir.

---

[4] As mentioned above, Plaintiff's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was dismissed as untimely.  See Higgs v. Shaw, Civil Action No. 06-2206 (WJM).

1994).  Plaintiff, has alleged no facts suggesting that his trial and appellate counsel could be considered state actors. Although not "immune" from suit or liability, an attorney may be entitled to dismissal of a civil rights action on the ground that it fails to state a claim, because lawyers, typically, are not "state actors."  "[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."  Polk County v. Dodson, 454 U.S. 312, 318 (1981).  Similarly, a public defender "does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  Polk Co. v. Dodson, 454 U.S. at 325.

Although an attorney may act "under color of state law" when engaged in a conspiracy with state officials to deprive a defendant of federal rights, see, e.g., Tower v. Glover, 467 U.S. 914 (1984), Plaintiff's summary allegations of "conspiracy" are unsupported by any facts tending to suggest such conspiracy, and are instead directed solely at alleged defects in representation, including failure to object to the indictment, evidentiary errors, and failure to assert on appeal claims Plaintiff favored.  Accordingly, Plaintiff has failed to allege any facts suggesting that his defense counsel should be

considered state actors.  The claims against the defense counsel must be dismissed.

E.    Malicious Prosecution Claim

Plaintiff contends that prosecutor Thomas D. Carver, Jr., and a John Doe prosecutor who appeared in the grand jury proceedings wrongfully prosecuted him for a non-existent crime, attempted carjacking.

In order to state a prima facie case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998); Luthe v. Cape May, 49 F. Supp.2d 380, 393 (D.N.J. 1999).  Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are: (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff. Lind v. Schmid, 67 N.J. 255, 262 (1975).  A plaintiff attempting to state a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'"  Gallo, 161 F.3d at 222 (quoting

18

Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510 U.S. 266 (1994). Ordinarily, the statute of limitations on a malicious prosecution claim begins to run on the date plaintiff receives a favorable termination of the prior criminal proceeding. Heck v. Humphrey, 512 U.S. 477, 489 (1994). Here, Plaintiff has failed to allege a favorable termination of the criminal proceeding. To the contrary, Plaintiff alleges that his state post-conviction proceedings have not been successful and his federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was dismissed as untimely. Accordingly, this claim does not appear to have accrued and would ordinarily be subject to dismissal without prejudice.

In addition, however, "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled

19

to the protections of absolute immunity." <u>Buckley v.</u>
<u>Fitzsimmons</u>, 509 U.S. 259, 273 (1993).

Thus, the types of actions challenged here -- statements
made by a prosecuting attorney before a grand jury, the
decision to initiate prosecution for a particular criminal act,
actions undertaken at trial -- are entitled to absolute
immunity.  Accordingly, Plaintiff's claim of malicious
prosecution must be dismissed with prejudice.

F.   <u>Alleged Misleading Statements to Parole Board</u>

Plaintiff contends that prosecutor Judy M. Gagliano made
misleading statements in a letter to the State Parole Board,
thus prolonging Plaintiff's confinement.

Absolute prosecutorial immunity also applies to
adversarial acts of prosecutors in post-conviction proceedings,
including parole proceedings, which typically are viewed as a
continuation of the sentencing process, where the prosecutor is
personally involved in the subsequent proceeding and continuing
in the role of advocate for the state.  <u>See</u>, <u>e.g.</u>, <u>Lucien v.</u>
<u>Preiner</u>, 967 F.2d 1166, 1167-68 (7th Cir.), <u>cert. denied</u>, 506
U.S. 893 (1992) (clemency proceeding); <u>Johnson v. Kegans</u>, 870
F.2d 992, 995-98 (5th Cir.), <u>cert. denied</u>, 492 U.S. 921 (1989)
(absolute immunity extends to prosecutor's act of providing
information to parole board); <u>Allen v. Thompson</u>, 815 F.2d 1433,
1434 (11th Cir. 1987) (same).  The activities allegedly

20

undertaken by prosecutor Judy M. Gagliano are entitled to absolute immunity; Plaintiff's claim must be dismissed with prejudice.

G.   Claims under 42 U.S.C. § 1985

Plaintiff asserts that all of his claims arise under 42 U.S.C. § 1985, "Conspiracy to interfere with civil rights."

Subsection (1) refers to conspiracy to prevent a person from accepting or holding public office or to prevent a public officer from performing his duties.[5]  This Court can discern no basis for a claim under subsection (1) based upon the facts alleged.

Title 42 U.S.C. § 1985(2) provides, in pertinent part:[6]

_____

[5] Specifically, § 1985(1) provides a cause of action:

> If two or more persons in any State or Territory
> conspire to prevent, by force, intimidation, or
> threat, any person from accepting or holding any
> office, trust, or place of confidence under the
> United States, or from discharging any duties
> thereof; or to induce by like means any officer of
> the United States to leave any State, district, or
> place, where his duties as an officer are required
> to be performed, or to injure him in his person or
> property on account of his lawful discharge of the
> duties of his office, or while engaged in the
> lawful discharge thereof, or to injure his
> property so as to molest, interrupt, hinder, or
> impede him in the discharge of his official duties
> ... .

[6] The second clause of § 1985(2) pertains to conspiracies to
deny any citizen of the equal protection of the laws.  As
Plaintiff makes no claim of a "class-based, invidiously
discriminatory animus," the Court does not construe the Complaint
as attempting to assert a claim under the second clause of

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; ... [an action for damages will lie].

42 U.S.C. § 1985(2)

To state a § 1985(2) deterrence claim, a plaintiff must allege (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff. <u>Brever v. Rockwell International Corp.</u>, 40 F.3d 1119, 1126 (10th Cir. 1994) (citing <u>Rutledge v. Arizona Bd. of Regents</u>, 859 F.2d 732, 735 (9th Cir. 1988). It is not necessary that the witness actually be deterred from testifying. <u>Brever</u>, 40 F.3d at 1128-29. Section 1985(2) protects parties and witnesses appearing in federal court and reaches private action. <u>See</u> <u>Brawer v. Horiwitz</u>, 535 F.2d 830, 839-40 (3d Cir. 1976). Again, Plaintiff alleges no facts suggesting intimidation. Plaintiff fails to state a claim under § 1985(2).

---

§ 1985(2). <u>See</u>, <u>e.g.</u>, <u>Brawer v. Horowitz</u>, 535 F.2d 830, 840 (3d Cir. 1976). <u>Cf.</u> <u>Kush v. Rutledge</u>, 460 U.S. 719 (1983) (no allegation of racial or class-based invidiously discriminatory animus are required to establish a cause of action under the first clause of § 1985(2)).

Title 42 U.S.C. § 1985(3) reads, in pertinent part:

If two or more persons in any State or Territory
conspire or go in disguise on the highway or on the
premises of another, for the purpose of depriving,
either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of
equal privileges and immunities under the laws; or
for the purpose of preventing or hindering the
constituted authorities of any State or Territory
from giving or securing to all persons within such
State or Territory the equal protection of the laws;
... in any case of conspiracy set forth in this
section, if one or more persons engaged therein do,
or cause to be done, any act in furtherance of the
object of such conspiracy, whereby another is injured
in his person or property, or deprived of having and
exercising any right or privilege of a citizen of the
United States, the party so injured or deprived may
have an action for the recovery of damages occasioned
by such injury or deprivation, against any one or
more of the conspirators.

42 U.S.C. § 1985(3).

To state a claim under § 1985(3), one must allege:

(1) a conspiracy; (2) for the purpose of depriving,
either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of
equal privileges and immunities under the laws; and
(3) an act in furtherance of the conspiracy; (4)
whereby a person is either injured in his person or
property or deprived of any right or privilege of a
citizen of the United States.

United Broth. of Carpenters and Joiners of America, Local 610,

AFL-CIO v. Scott, 463 U.S. 825, 829 (1983).  With respect to

the second element, the conspiracy must be motivated by "some

racial, or perhaps otherwise class-based, invidiously

discriminatory animus."  Griffin v. Breckenridge, 403 U.S. 88,

102 (1971).  The classes protected by § 1985(3) are narrowly-

drawn and the Supreme Court has recognized only claims by victims of racially motivated conspiracies: minorities and, perhaps, their political supporters.  See United Broth. of Carpenters and Joiners, 463 U.S. at 837-39.  While leaving open the possibility that § 1985(3) might apply to class-based animus not based upon race, the Supreme Court has refused to extend the statute's scope to "conspiracies motivated by economic or commercial animus," see United Brotherhood of Carpenters and Joiners, 463 U.S. at 836-38.  To the extent the requirement can be met by something other than racial animus, it "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993).

Applying this guidance and the history of § 1985(3), the United States Court of Appeals for the Third Circuit has noted the breadth of the statute's language and has held that it does protect against conspiracies directed against women, see Novotny v. Great American Federal Savings & Loan Ass'n, 584 F.2d 1235, 1238-44 (3d Cir. 1978), and against the mentally retarded, see Lake v. Arnold, 112 F.3d 682, 686 (3d Cir. 1997). In reaching these conclusions, the Court relied heavily upon the fact that discrimination based upon gender or mental handicap, like discrimination based upon race, often rests on

immutable characteristics for which the plaintiff bears no responsibility and which have no relationship to ability.  See Lake, 112 F.3d at 687; Novotny, 584 F.2d at 1243.

Plaintiff's § 1985(3) claim fails to allege any racial or otherwise class-based invidiously discriminatory animus at the heart of the defendants' action.  To the extent that he seeks to rely on his status as a criminal suspect as a basis for his claim, this Court is not aware of any court that has held that criminal suspects constitute a class which could claim the protection of § 1985(3), nor does this Court see in such status the type of immutable characteristic, for which the class member bears no responsibility, that has historically required protection.  Cf., e.g., Schoenfield v. County of Humboldt, 875 F.2d 870, 1989 WL 57644, **3-4 (9th Cir. 1989) (persons accused of child molestation do not constitute a class subject to the protection of § 1985(3)); Trerice v. Pedersen, 769 F.2d 1398, 1402-03 (9th Cir. 1985) (no cause of action based on status as military prisoner); McCracken v. City of Chinook, 652 F.Supp. 1300, 1307 (D.Mont. 1987) (class of "accused defendants" and "prisoners" not entitled to claim protection of § 1985(3)); Nakao v. Rushen, 542 F.Supp. 856, 859 (N.D. Cal. 1982) (class of "state prisoners" not protected under § 1985(3)). Accordingly, Plaintiff has failed to state a claim for

conspiracy to deprive him of the equal protection of the laws under § 1985(3).

H.   Claims under 18 U.S.C. §§ 241, 242

Plaintiff alleges generally that his claims arise under 18 U.S.C. §§ 241, 242.

Sections 241 and 242 are federal criminal statutes. Pursuant to § 241, in pertinent part:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State ... in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or
>
> If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--
>
> They shall be fined under this title or imprisoned not more than ten years, or both; ... .

Section 242 provides, in pertinent part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State ... to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; ... .

18 U.S.C. § 242.

As detailed above, it is Plaintiff's contention that the defendants engaged in civil rights violations in connection

26

with the criminal prosecution pursuant to which Plaintiff

presently is incarcerated.  Authorities are in agreement,

however, that the submission by a private party of a complaint

under §§ 241 or 242 is not the appropriate manner in which to

initiate criminal proceedings.

> A private person may not prosecute a federal
> criminal complaint.  Prosecution of a federal crime
> is the prerogative of the United States through the
> attorney general and his delegates, the United States
> attorneys.  28 U.S.C. § 516 ("Except as otherwise
> authorized by law, the conduct of litigation in which
> the United States, an agency, or officer thereof is a
> party, or is interested, and securing evidence
> therefor, is reserved to officers of the Department
> of Justice, under the direction of the Attorney
> General."); The Confiscation Cases, 74 U.S. 454, 457
> (1868) ("Public prosecutions, until they come before
> the court to which they are returnable, are within
> the exclusive direction of the district attorney,
> [...]"); ...; United States ex rel. Savage v. Arnold,
> 403 F.Supp. 172, 174 (E.D. Pa. 1975); United States
> v. Panza, 381 F.Supp. 1133, 1133-35 (W.D. Pa. 1974)
> (reciting history of rule); ... .

Peters v. Beard, 2006 WL 2174707 (M.D. Pa. June 13, 2006)

(Report and Recommendation) (citations omitted), adopted by,

2006 WL 2175173 (M.D. Pa. Aug. 1, 2006).  See also Higgins v.

Neal, 52 F.3d 337, 1995 WL 216920 (10th Cir. 1995) (unpubl.)

(collecting cases); Caracter v. Avshalumov, 2006 WL 3231465

(D.N.J. Nov. 8, 2006) (collecting cases); Stoll v. Martin, 2006

WL 2024387 (N.D. Fla. July 17, 2006) (collecting cases).

Nevertheless, if a purported criminal complaint warrants

action, a Court may refer it to the United States Attorney for

action.  Savage, 403 F.Supp. at 174.  The commencement of a

27

criminal action is governed in part by Federal Rules of Criminal Procedure 3 and 4, which provide some guidance in determining whether a purported criminal complaint merits reference to the United States Attorney.  Rule 3 provides, "The complaint is a written statement of the essential facts constituting the offense charged.  It must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer."  Rule 4 provides, in pertinent part, "If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."

Here, Plaintiff's conclusory allegations of "conspiracy" and his other allegations are not sufficient to establish probable cause to believe that the defendants violated §§ 241 or 242.[7]  This Court perceives no reason, on the basis of the facts before it, to refer this matter to the United States Attorney.

I.   Pendent State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original

_____

[7] The elements of a violation under § 242 are set forth in United States v. Senak, 477 F.3d 304 (7th Cir.), cert. denied, 414 U.S. 856 (1973).

jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.  The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  As no such extraordinary circumstances appear to be present, this Court will decline to exercise jurisdiction over any pendent state claims and will dismiss such claims without prejudice.

V.   <u>CONCLUSION</u>

For the reasons set forth above, all claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.[8]  An appropriate order follows.

------

[8] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case."  <u>Martin v. Brown</u>, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting <u>Borelli v. City of Reading</u>, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of the claims dismissed without prejudice, he may file a motion to re-open these claims in accordance with the court rules.  Any such motion must be accompanied by a proposed Amended Complaint.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: May 18, 2007